THE GOERKE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 5992.   Promulgated July 29, 1927.

1. The amount received by the petitioner in 1915 as considera-
tion for the cancellation of an existing lease is income .to the
petitioner for that year.

2. The petitioner and Walter Goerke Co. were affiliated during
the fiscal year ended February 28, 1921.

*Mark Eisner, Esq.,* and *Ferdinand Tannenbaum, Esq.,* for the
petitioner.

*J. Harry Byrne, Esq.,* for the respondent.

This proceeding is for the redetermination of a deficiency in in-
come and profits taxes for the fiscal year ending February 28, 1921,
in the amount of $30,171.86.

FINDINGS OF FACT.

The petitioner is a corporation organized under the laws of the
State of New Jersey and it is and has been for many years engaged
in operating a department store at Newark, N. J.

In the year 1901 the petitioner took a long-term lease from one
Jackson on certain real- estate hereinafter called " the Market Street
property," and in 1912 it underlet that property to Sebastian S.
Kresge for a term of fifteen years, with renewal privileges. Kresge
assigned the sublease to the S. S. Kresge Co. From this sublease
the petitioner realized a profit of about $20,000 per year. In the
year 1915 the petitioner was greatly in need of money and its offi-
cers offered to sell to the Kresge Company the petitioner's lease on
the Market Street property. The Kresge Company agreed to buy
the lease and to pay $140,000 therefor, but the petitioner discovered
that because of certain provisions contained therein the lease be-
tween it and Jackson could not be sold. Therefore, on September
30, 1915, the petitioner and the S. S. Kresge Co. entered into a new
sublease whereby the Kresge Company agreed to pay to the peti-
tioner for a term of eleven years and eight months an annual rental
for the Market Street property equal to the annual rental which
the petitioner was obligated to pay Jackson under the original lease,
the Kresge Company to have the privilege of renewing the sublease
in 1927 for a period of ten years at an increased rental. The Kresge
Company when it entered into the new sublease paid the petitioner
$140,000 for the cancellation of the old sublease, which payment and
cancellation were specifically covered by article 13 of the new
sublease, as follows:

13. In consideration of the payment by the said tenant to the said landlord of the sum of One Hundred and Forty Thousand ($140,000) Dollars, concurrently with the execution of this lease, the receipt of which said sum is hereby acknowledged, the indenture of lease dated April Nineteenth, Nineteen Hundred and Twelve, made and entered into between the landlord as party of the first part and one Sebastian S. Kresge as party of the second part, for the premises hereby demised, which said lease was thereafter assigned by the said Sebastian S. Kresge to the tenant, who is now the holder thereof, is hereby terminated and surrendered.

In the year 1913 a certain building in the City of Newark, upon which the petitioner had a long-term lease, became vacant and in order to stop the loss arising from such vacancy the petitioner decided to operate a branch store in the building under a separate corporate name. A corporation known as the Walter Goerke Co. was thereupon organized.

During the fiscal year ending February 28, 1921, the capital stock of the petitioner was owned by the following persons:

|  | Shares |
|---|---|
| Rudolph J. Goerke | 5,450 |
| Ottilie M. Goerke | 1,456 |
| R. J. Goerke, Jr. | 2 |
| George O. C. Velsor | 2 |

Ottilie M. Goerke was the wife of Rudolph J. Goerke and she received her stock from him as a gift. She did not at any time question her husband's acts in respect to the corporation, rarely attended a stockholders' meeting, and her stock was always voted by her husband. R. J. Goerke, Jr., and George O. C. Velsor were respectively son and brother-in-law of Rudolph J. Goerke. Velsor held his shares of stock in the corporation for qualifying purposes only.

The capital stock of the Walter Goerke Co. during the fiscal year ending February 28, 1921, was owned by the following persons:

|  | Shares |
|---|---|
| Rudolph J. Goerke | 60 |
| R. J. Goerke, Jr. | 52 |
| Walter Goerke | 82 |
| Edmund Goerke | 52 |

The 52 shares of stock standing in the name of R. J. Goerke, Jr., were paid for by his father, Rudolph J. Goerke, and were assigned to and actually held by Rudolph J. Goerke, with the understanding that the son would pay for them if he made any money. At the time the Walter Goerke Co. was organized the son was about twenty-one years of age. Walter Goerke, who was a nephew of Rudolph J. Goerke, came into the business at the request of Rudolph J. Goerke because his name was desired in the corporate title. He was not requested to invest in the capital stock of the company, but having made an investment therein Rudolph J. Goerke guaranteed him

against any loss arising therefrom. It was distinctly understood between Rudolph J. Goerke and Walter Goerke that the petitioner was to manage the Walter Goerke Co. in every way, and Walter Goerke also agreed to and did let Rudolph J. Goerke vote his, Walter Goerke's, stock as he, Rudolph J. Goerke, saw fit.

Edmund Goerke was also a nephew of Rudolph J. Goerke and was an employee of one of the petitioner's subsidiary corporations. He purchased his stock in the Walter Goerke Co. by borrowing $3,000 from the Union Trust Co. of Elizabeth, N. J., on the endorsement of Rudolph J. Goerke, who held the stock as collateral.

The buying personnel of the petitioner was used by the Walter Goerke Co., but no charge was made by the petitioner for buying the merchandise of the Walter Goerke Co., nor was any commission of any kind ever charged. The greater part of the fixtures of the Walter Goerke Co. were built by carpenters employed by the petitioner without charge either for the fixtures or the labor. Some of the original merchandise of the Walter Goerke Co. belonged to the petitioner and was billed to the Walter Goerke Co. at cost.

When the Walter Goerke Co. sent goods back to the petitioner they were credited by the petitioner at full price. The treasurer and head bookkeeper of the petitioner were in charge of the Walter Goerke Company's books but their compensation was paid entirely by the petitioner. The petitioner made loans to the Walter Goerke Co. for which no interest was charged, and any unsalable merchandise of the Walter Goerke Co. was taken back by the petitioner at full price. The only rent which the Walter Goerke Co. was required to pay for the building it occupied, was the amount which the petitioner was obligated to pay to the owner of the property. After the Walter Goerke Co. had been operating for about two years a tenant was found for the property occupied by it and the company's stock of merchandise was liquidated or taken over by the petitioner.

The respondent, upon audit of the petitioner's income and profits-tax return for the fiscal year ending February 28, 1921, included in gross income for that year $12,173.90 of the amount received by it in 1915 as a consideration for the cancellation of the sublease mentioned, excluded from invested capital $86,231.94 of the amount so received in 1915 and also determined that the petitioner and the Walter Goerke Co. were not affiliated within the meaning of section 240 of the Revenue Acts of 1918 and 1921.

OPINION.

MARQUETTE: The petitioner contends that no part of the amount paid it in the year 1915 by the Kresge Company as a consideration for the cancellation of the sublease then existing between the two

companies was income for any subsequent year; that the entire amount was income in 1915 and should be reflected in invested capital for subsequent years, and that the petitioner and the Walter Goerke Co. were affiliated during the fiscal year ending February 28, 1921, and were entitled to file a consolidated return of income and invested capital. The respondent contends that the amount received by the petitioner from the Kresge Company should be considered as advance rental and that it should be prorated as income over the life of the new lease and included in invested capital only as it is earned or accrued. The respondent also denies that the petitioner and the Walter Goerke Co. were affiliated during the year under consideration.

We find ourselves unable to agree with the contention of the respondent as to either of the issues raised. The $140,000 paid by the Kresge Company to the petitioner was, as stated in the written instrument executed on September 30, 1915, a consideration for the cancellation of an existing lease, and the petitioner having canceled the lease had done all that it was required to do to receive and retain that consideration. When the existing lease was canceled and the consideration paid the transaction in regard to that existing lease and that consideration was completed, and no breach of the new lease on the part of the petitioner would have given rise to a cause of action for the recovery by the Kresge Company of the $140,000 or any part thereof. In the *Appeal of Denholm & McKay Co.*, 2 B. T. A. 444, the facts were that the taxpayer prior to the year 1919 leased certain real estate for twenty-one years. The terms of the lease became burdensome to the taxpayer and it therefore in the year 1919 entered into a new lease for the property it was occupying and paid $60,128.08 for the cancellation of the old lease, which amount it deducted from gross income for 1919 as an ordinary and necessary business expense. The Commissioner disallowed the deduction and an appeal was taken to this Board, which sustained the taxpayer's contention. The situation presented in that appeal is different from the instant appeal in that we there considered the deductibility from the lessee's gross income of the amount paid for the cancellation of the lease, while here we are considering the inclusion in the lessor's income of the amount so paid. However, the reasoning in the *Denholm & McKay Co.* appeal applies with equal force here. For the reasons stated we are of the opinion that the entire amount paid by the Kresge Company to the petitioner in the year 1915 as a consideration for the cancellation of the then existing lease was income to the petitioner for the year 1915. The petitioner's income and invested capital for the fiscal year ending February 28, 1921, as determined by the respondent should be adjusted accordingly.

We are also of the opinion that the petitioner and the Walter Goerke Co. were affiliated during the fiscal year ending February 28, 1921, and that their tax liability for that year should be computed upon the basis of a consolidated return of income and invested capital.

The evidence establishes to our entire satisfaction that the Walter Goerke Co. was in reality only a branch of the petitioner, and that Rudolph J. Goerke either owned or controlled the entire capital stock of both corporations. As to this point there is no conflict in the testimony and an extended discussion thereof is not necessary.

The petitioner also alleges that the respondent erred in reducing its invested capital as of March 1, 1920, by deducting therefrom the prorated amount of the income and profits taxes for that fiscal year. This contention must be decided adversely to the petitioner. Section 1207, Revenue Act of 1926.

Reviewed by the Board.

> *Judgment will be entered on 15 days' notice, under Rule 50.*